Arthur VanKOEVERING, Plaintiff,

v.

The MANUFACTURERS LIFE INSURANCE COMPANY, a foreign corporation, Defendant.

Civ. A. No. 4635.

United States District Court
W. D. Michigan, S. D.

Oct. 27, 1964.

Warner, Norcross & Judd, Grand Rapids, Mich., Harold S. Sawyer, Charles C. Lundstrom, Grand Rapids, Mich., of counsel, for plaintiff.

Uhl, Bryant, Wheeler & Upham, Grand Rapids, Mich., Gordon B. Wheeler, Grand Rapids, Mich., of counsel, for defendant.

FOX, District Judge.

On April 12, 1963, plaintiff and his wife met with Chester Kiekentveld, a registered agent of defendant company, to take out a policy of life insurance on

Mrs. Lila VanKoevering. Plaintiff himself was uninsurable, and the VanKoeverings had decided upon life insurance for Mrs. VanKoevering as the most satisfactory method of establishing an estate plan. Agent Kiekentveld was aware of this intention of the VanKoeverings; in fact, he had attended a meeting with a member of the trust department of a local bank which the VanKoeverings had arranged to determine what estate arrangement would be most workable. Mr. Kiekentveld included the information that the purpose of the insurance was for an estate plan on the back of the application for insurance which he forwarded to the home office of the defendant company.

The VanKoeverings were given a so-called conditional receipt or binder, but from that day forward no indication was received from defendant as to whether or not it had accepted or rejected Lila VanKoevering as an insurable risk, until after the death of Mrs. VanKoevering. The doctor authorized by defendant to conduct the medical examination classed her as an "average or better" insurance risk.

On May 15, 1963, the defendant wired the Grand Rapids Office that there would be an additional premium. On May 16, agent Kiekentveld telephoned the VanKoevering residence to advise of this fact. There is conflicting testimony as to the content of that conversation, but that most favorable to the defendant indicated that Mrs. VanKoevering said to tell her when the policy came in.[1]

On May 18, 1963, Policy No. 1,723,761, dated May 16, 1963, was received in the Grand Rapids office. Agent Kiekentveld called the VanKoeverings to learn when he might come over with the policy and learned instead that Mrs. VanKoevering had died on the previous day, May 17. He then mailed the policy back to the Home Office. On May 31, 1963, plaintiff phoned the Grand Rapids Office to ask about the policy and was informed that it had not been accepted by the Home Office.

Plaintiff brought suit based on four different theories: first, that the time passage between the time of application and notice that the policy had been refused was an unreasonable delay and constituted implied acceptance of the offer to buy life insurance; second, that defendant owed plaintiff a duty to take prompt action on the application and give him prompt notice, which duty was breached, with a resulting loss of $20,-000; third, that Lila VanKoevering at the time of the phone call from Agent Kiekentveld of May 16, 1963, was either authorized to act as an agent for plaintiff, or that she was acting as a partner in a joint venture, and in either capacity, did accept the offer proposed to her at that time; and fourth, that the dealings of April 12, 1963, between the VanKoeverings and Kiekentveld constituted an offer to purchase insurance on the life of Lila VanKoevering at her then age and medical condition.

At an earlier stage in the proceedings, plaintiff dropped a count alleging that Mrs. VanKoevering was a "standard risk," and that defendant's determination that she was not was arbitrary and unwarranted.

On all counts, defendant contends that the written instruments were clear and unambiguous, and controlled all the issues in the case, and the court was, therefore, in error in admitting any testimony to detract from the clear and unambiguous language of those writings. The court did not so find.

As to the admission of evidence concerning the prior relationship of Kiekentveld and the VanKoeverings, and the matters discussed in the course of their conversation on the evening that the policy was applied for, this court saw glaring ambiguities which unquestion-

1. The testimony of the plaintiff was that agent Kiekentveld had told him that Mrs. VanKoevering had asked for a few days to transfer funds from their savings account to their checking account in order to have a sufficient sum to cover the amount of the premium, which they would pay annually.

ably called for parol evidence to dispel the uncertainty which surrounded the entire transaction.

 "It is undoubtedly the law that evidence is competent to show the relations of parties and attending circumstances as an aid in interpreting, or construing, a written instrument which is uncertain and ambiguous." In re Landwehr's Estate, 286 Mich. 698, 282 N.W. 873, 875 (1938).

Defendant contends that the language of the binder which follows precludes any further explanation of the contract between the parties:

"(A) * * *

2. If on the date the application is signed, or the date of the last of any medical reports or tests required by the company, whichever is the later, the life insured in the opinion of the company's authorized officers at its Head Office *was insurable as a standard risk, under the Company's rules,* for the amount, the plan and any additional benefits, each as specified in the application; * * * Then, but only after all these conditions are met, the insurance under the terms of the policy applied for will become effective from the later date specified in (A) 2 * * *

"(C) Unless all the conditions under (A) are met, no insurance will become effective under this receipt and the payment acknowledged by this receipt will be returned." (Emphasis supplied.)

For the purposes of answering this argument, reference must be made to the language in (A) 2, " * * * under the terms of the policy applied for * * * " Thus, defendant's position here is based upon the presumption that the policy which was issued was pursuant to the application of which the receipt was a part; for the condition precedent to an effective policy is clearly stated to relate to "the policy applied for."

Defendant, therefore, must consider the application either as an application, in which case it is incorporated into the policy which did issue and creates ambiguities; or it can say it was not an application, in which case the policy as issued is ambiguous, and calls for additional evidence to explain what the parties' understanding was.

Provision 1 of that policy states that the policy and the attached application constitute the entire contract between the parties. Yet, again an ambiguity appears, for the application contains two stated premiums, and there must be an explanation of this fact by trying to discover what insurance was actually applied for.

' In other words, for the condition precedent which defendant relies upon to operate, the policy applied for must be delivered. The application shows that the policy applied for had an annual premium of $1,247.80. Yet the policy which was issued called for an annual premium of $1,483.80. This is a variance which cannot be explained without resort to extrinsic evidence.

Thus, if this is the policy applied for, it is ambiguous; if it is not, the condition is inapplicable and we must find out what led up to the issuance of the policy.

There is also an undeniable ambiguity surrounding the dates here. The policy itself is dated May 16, 1963, two days prior to the insured's death. Defendant claims the policy was not in effect as of that date, but this then creates an ambiguity, for the significance of the policy date is then unexplained, especially in view of provision 2, which makes the policy incontestable after it has been in force during the insured's lifetime for two years from date of issue,[2] provision

---

2. M.S.A. § 24.14014 [P.A.1956, No. 218] provides: "Life Insurance Contract; entire contract; incontestability.] There shall be a provision that the policy, together with the application therefor

* * * shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for 2 years from its date * * *."

13, which designates the policy anniversary as the anniversary of the policy year date (May 16), and provision 14, which makes a policy year the twelve-month period commencing on the policy year date.

In addition, the face of the policy calls for the payment of premiums from the date of the policy, which is May 16, which at very least creates an ambiguity in light of defendant's claims that the policy had to be delivered to be effective, in which case premiums would be paid for a period in which there was no coverage.

A further justification for admission of parol evidence is found in the language used in the conditional receipt. It is there made a condition to an effective policy that the insured be insurable in the opinion of the authorized company officers at its head office, "as a standard risk, under the Company's rules."

Nowhere in the application, receipt or policy itself, not to mention the record of the trial, is there any indication of what a standard risk under the company's rules is. In effect, this leaves the company with a latitude which is unbounded in deciding when it will be obligated by a contract of insurance, while providing the prospective insured with no indication of his status.

The situation presented by this case is precisely that in the mind of the eminent Learned Hand when he spoke on a clause requiring approval in a policy of insurance in the case of Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 160 F.2d 599, 602:

" * * * the ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause as leaving him uncovered until the insurer at its leisure approved the risk; he would assume that he was getting immediate coverage for his money."

■ This language was quoted with approval by Mr. Justice Edwards, speaking for the Michigan Supreme Court in

the case of Wadsworth v. New York Life Insurance Co., 349 Mich. 240, 84 N.W.2d 513, a case involving the question of the effective date of an insurance policy. In addition, he enunciated an important rule of evidence for insurance cases:

"When *equivocal words* are used in a contract, parol evidence is admissible to aid in arriving at the intention of the parties." Id. at 258, 84 N.W.2d at 519. (Emphasis supplied.)

On May 15, 1963, defendant's home office wired or teletyped the following message to the Grand Rapids Office: "1,723,761 VanKoevering-gross extra $11.80 per thousand, 150%, regret no age credit." This jargon could not even be explained by defendant's agent on the witness stand.

■ Finally, to return to the opinion of Judge Learned Hand, he remarked:

"A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an *esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.*" Gaunt v. John Hancock Mut. Life Ins. Co., supra, 160 F.2d at 602. (Emphasis supplied.)

■ Where, as here, an insurance company, having accepted an applicant for insurance as an insurable risk, seeks to acquit itself of liability on the basis of technical requirements of the contract, parol evidence is admissible to determine the true understanding of the parties.

■ Thus, the writing could only embody the entire agreement between the parties if it was reduced to writing at the time. There was testimony to warrant the inference that the application had been completed by Kiekentveld individually after he left the VanKoeverings. His own testimony establishes that he is not sure whether or not the entire application was filled out in their presence. Again, if the writing was not complete at the time, it was not the entire agree-

ment and there can be no objection to evidence to explain what the real understanding was.

Clearly, then, any further claims based on the theory that the writing between the parties was clear and unambiguous must be considered to be of no force.

■ Under the circumstances of this case, it would be grossly unfair to deny insurance coverage. The applicant for life insurance, untutored in the practices of the insurance trade, must be protected against the ambiguous and the unfamiliar in insurance policies when such are used as a basis for escaping liability.

This is one of the conclusions reached by the Yale Law Review Note—"Life Insurance Companies: The Mystery of the Non-Binding Binder," 63 Yale L.R. 523.

It may be well for us to reconsider the concise statement made by Mr. Justice Holmes in Coppage v. Kansas (1915) 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441:

"If that belief, whether right or wrong, may be held by a reasonable man, it seems to me that it may be enforced by law in order to establish the equality of position between the parties in which liberty of contract begins."

■ These insurance contracts are in altogether too many instances a totally unilateral proposition and in interpreting them courts should look to the mind of the applicant and the impressions and representations which have been conveyed to the applicant by the agent, the activities and the circumstances involved.

■■ As to Count III, defendant asserts that there was no evidence of agency or joint venture sufficient to leave the question to the jury. It is clear from the meetings with the trust officer, the fact that Kiekentveld had been called to sit in on their deliberations, the fact that Mr. VanKoevering was uninsurable, the testimony indicating that this was a jointly conceived and prosecuted effort to establish an estate plan for the benefit of their two sons, and the fact that the check for the initial payment was drawn by Mrs. VanKoevering that there existed evidence sufficient to warrant the submission to the jury of the question of agency. See 1 Michigan Law and Practice, Agency, P. 309:

"Without an express appointment and acceptance, the creation of an agency may be implied from the words and conduct of the parties and the circumstances of the particular case."

Defendant further objects under Count III to the failure of the court to give defendant's requested instruction No. 5, stating that the May 16 policy was a counteroffer which was conditioned upon delivery and payment of the premium during the lifetime of continued insurability of the insured. As shown above, there is ambiguity between the application, which calls for delivery of the policy itself before it goes into effect, and the terms of the policy, which seem to make the policy effective from the date of the policy. M.S.A. § 24.14014, set forth, supra, forces the same conclusion.

■ Furthermore, the concept of constructive delivery is in question also. The policy was actually sent from the home office to Grand Rapids. Mailing of a policy from the home office to an agent for the purpose of delivery to the insured constitutes constructive delivery, even though the policy is in fact never actually delivered. Jackson v. New York Life Ins. Co., 7 F.2d 31 (CCA 9, 1925). Constructive delivery is the law of Michigan. Dailey v. Preferred Masonic Mutual Accident Ass'n of America, 102 Mich. 289, 57 N.W. 184, 26 L.R.A. 171. Whether or not there was constructive delivery was a fact question for the jury.

■ As to the payment of premium, the jury could find that the amount of $107.65 was a binding premium amount. If still proceeding under the original application, it could be found to be an interim rate, as that term is used in the application; if proceeding under the theory of a counteroffer, it would suffice as a binder.

As to Count IV, the defendant returns to the position that there is a written application which in no way supports the contention that there was an offer to purchase insurance on the insured at her then age and medical condition.

There can be no question but that the company accepted Mrs. VanKoevering as an insurable risk. The question then becomes why or how it accepted her. In light of the background of the application, the testimony of Mr. VanKoevering. that he asked only what it would take to put the policy into effect, being interested only in the insurance and not the amount of the premium; the fact that the agent's report on the back of the policy clearly showed that the policy was for an estate plan (which would appear somewhat obvious in view of the applicant's age); and finally, the fact that the policy was issued and sent to Grand Rapids, dated at the home office, rather than left blank for the Grand Rapids office to fill in when, as the company claims, the policy was accepted, there were sufficient questions of fact to submit the nature of the offer to the jury.

 The testimony of Mr. VanKoevering could easily lead the jury to the conclusion that the application was for insurance at the then age and health of the applicant.

From the surrounding circumstances, and the fact of the policy as issued from the home office, the jury well could have decided that there was in fact such an offer, and that the company accepted such offer by issuing the policy.

Under the law of Michigan, insurance companies have a duty to act with reasonable promptness on applications for life insurance. Robinson v. United States Benevolent Society, 132 Mich. 695, 94 N.W. 211.

---

3. The defendant claims that the question should be decided as a matter of law, maintaining that it was not at all unreasonable in processing the application, since it was awaiting further medical reports. The question to be resolved,

It is undisputed that five weeks elapsed between the time of the application and the death of Mrs. Van-Koevering, and at no time was either of the VanKoeverings advised of the fact that the company had rejected the application. Whether or not a five-week delay in the circumstances of this case, constituted an unreasonable delay was clearly a question on which reasonable minds could differ, and was, therefore, properly submitted to the jury.[3] 1 Couch on Insurance 2d, § 7:31, p. 347, and cases cited.

The motion for judgment notwithstanding the verdict or for a new trial is denied.

---

however, is not whether the time passage was unreasonable by insurance company standards, but whether the period without notification of any kind was unreasonable when considered from the standpoint of the insured.