John and Maryjane DOHANYOS,
Plaintiffs–Appellees,

v.

PRUDENTIAL INSURANCE COMPANY,
Defendant–Appellant.

No. 91–1406.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 8, 1991.

Decided Jan. 6, 1992.

Paul A. Nida argued & briefed, Troy, Mich., for plaintiffs-appellees.

Robert W. Powell argued & briefed, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant-appellant.

Before MERRITT, Chief Judge, GUY, Circuit Judge, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Defendant, Prudential Insurance Company ("Prudential"), appeals the district court's denial of its motion for summary judgment and grant of a motion for summary judgment in favor of Plaintiffs, John and Maryjane Dohanyos, in this action for payment of benefits on a life insurance policy. For the following reasons, we affirm the district court's grant of the Dohanyos' motion for summary judgment.

## I

John and Maryjane Dohanyos are the parents of Aaron Dohanyos, who died in a work-related accident on July 2, 1990. Mr. and Mrs. Dohanyos are the beneficiaries of a $53,571 policy of insurance on Aaron's life. They contend that they are entitled to the full amount of benefits under this policy. Prudential claims that the policy never became effective.

On April 25, 1990, Aaron completed an application for this life insurance policy. The application contains Aaron's handwritten request: "Policy Date 7-1-90." The application also contains the following preprinted language: "[N]o coverage will start unless: (1) a contract is issued, (2) it is accepted, and (3) the first full premium is paid while all persons to be covered are living...." Concurrently with the completion of the application, Aaron executed an acknowledgment, which provides as follows:

I have decided to purchase a Prudential/Pruco Life insurance policy with pre-

miums paid from money deducted out of my paycheck.

I realize that I have the option of paying the initial premium now, but I elect not to do so. Subject to underwriting acceptance, my policy will be dated July 1, 1990 (the first day of the third following month) and no payment can be accepted by Prudential/Pruco Life until after that date.

I understand that *no coverage* will be provided until Prudential/Pruco Life delivers my policy and receives the full initial monthly premium, which will be forwarded to Prudential/Pruco Life only after sufficient funds have been withheld from my paycheck.

I agree that Prudential's acceptance of money and binding of coverage will be conditional on my ability, when the policy is delivered, to answer all the questions in the application in the same way as I have just answered them. I agree that neither my employer nor Prudential/Pruco Life shall be required to provide coverage should a change in my underwriting profile not permit delivery of my policy.

After the execution of the application and prior to his death, there were additional contacts between Aaron and Prudential. Prudential's general manager for its Detroit office, Nick Valenti, first sent Aaron an April 25 letter indicating that the application had been submitted to Prudential and that "[t]he effective date of the policy will be July 1, 1990, with the first premium being withheld the month of June."[1] A May 29 Valenti letter to Aaron confirmed that payroll deductions for the policy would commence on June 8, 1990 and stated that "[a]s soon as the policy comes in, I will be back out to talk with you and answer any questions."

During late June, Prudential mailed from its Minneapolis home office to Valenti life insurance policies for several Livonia Magnetics employees, including Aaron. Apparently unaware that Valenti had successful-

---

1. Aaron's employer, Livonia Magnetics, was to withhold from Aaron's earnings payments for the policy and remit these payments to Valenti.

ly commenced the payroll deductions during June, Prudential also sent a notice to Aaron requesting direct payment to it of $52.68 for coverage during the month of July, to be paid by July 19, 1990. This notice, dated June 28, 1990, contained the following particular: "POLICY DATE JULY 01, 1990."

Valenti took a vacation during the latter part of June and did not return to his office until July 3, 1990. The life insurance policies for the Livonia Magnetics employees, including Aaron, had arrived at Valenti's office during his absence. When he returned, Valenti called Livonia Magnetics regarding the delivery of the policies to the employees. He was told that Aaron died in a work-related accident on July 2, 1990.

On July 16, 1990, in an attempt to comply with Prudential's June 28 notice requiring payment of July's premium by July 19, Mr. and Mrs. Dohanyos sent Prudential a check for $52.68 for the July premium. On July 17, 1990, Valenti went to Livonia Magnetics to deliver policies to other employees and to collect the premiums withheld for the other employees. Valenti did not wish to accept the premium for Aaron's policy, but Livonia Magnetics refused to pay the other employees' premiums unless Valenti accepted Aaron's. Although Valenti accepted a single check for all of the premiums, on August 28, 1990, Prudential returned Aaron's share of the Livonia Magnetics payment and also returned the check sent by Mr. and Mrs. Dohanyos.

Mr. and Mrs. Dohanyos then sued on the policy. Prudential, relying on diversity, removed the action to federal court. At the close of discovery, both parties brought motions for summary judgment. The district court denied Prudential's motion and granted Mr. and Mrs. Dohanyos' motion. Prudential then filed its notice of appeal, requesting that the judgment of the trial court be reversed and judgment entered in its favor.

## II

This court reviews the granting of a motion for summary judgment de novo. We make all reasonable inferences in favor of the nonmoving party. *See EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). In this diversity case, the parties agree that Michigan law governs.

### A

Prudential first claims that no contract could come into existence prior to the delivery of the policy to Aaron. It cites the above-quoted application and acknowledgment, which were executed by Aaron, as imposing such a condition upon any obligation on the part of Prudential. Prudential further contends that no constructive delivery occurred under Michigan law; although it admits that the policy was forwarded to Valenti prior to Aaron's death, it claims that the policy was not forwarded for unconditional delivery. The policy was not to be delivered unless Aaron paid the premium, remained in the same health, and accepted the policy. Prudential asserts that there was no undue delay in the delivery of the policy and contends that it was under no obligation to deliver the policy by July 1, 1990. In summary, because there was no delivery of the policy to Aaron, Prudential contends that no contractual obligation ever arose.

Mr. and Mrs. Dohanyos respond by first noting that the policy was delivered to Valenti's office for delivery to Aaron with no restrictions or alterations; only Valenti's vacation prevented delivery to Aaron prior to his death. They argue that delivery to the agent in this case constitutes constructive delivery to Aaron. Furthermore, they contend, even if the policy were delivered to Valenti subject to payment, delivery, and acceptance conditions, Prudential waived these conditions. Its June 28 notice indicated that Prudential would extend credit, with respect to the July premium, until July 19, 1990. Finally, Mr. and Mrs. Dohanyos argue that any failure to meet the delivery requirement prior to the effective date was due to the dilatory behavior of Prudential and Valenti, and Prudential may not now profit from its own wrong.

The district court determined that Michigan law recognizes constructive delivery,

which applies when a policy is mailed to an agent solely for the purpose of delivery, even if the policy is never delivered to the insured. *See VanKoevering v. Manufacturers Life Ins. Co.*, 234 F.Supp. 786, 791 (W.D.Mich.1964) (construing Michigan law). The district court concluded that delivery to Valenti constituted constructive delivery to Aaron Dohanyos in this case. The court also found that Prudential waived the delivery requirement because, when Valenti was on vacation, it failed to make other arrangements for the timely delivery of the policy.

■■■ Under Michigan contract law, it is clear "that a party cannot take advantage of [its] own wrong nor profit by [its] own delinquencies...." *Bowen v. Prudential Ins. Co.*, 178 Mich. 63, 144 N.W. 543, 546 (1913). Michigan's Supreme Court endorsed this "fundamental" principle in a case somewhat similar to this one. *Bowen* involved a claim for benefits from a life insurance policy. The decedent, Bowen, died before the delivery requirement of the policy could be satisfied. The insurer had mailed the approved policy to its local agent, who received it on the day that Bowen died. The court rejected a constructive delivery argument because it concluded that the delivery to the agent was not unconditional. It carefully noted that the agent did not receive the policy during Bowen's lifetime and that the failure to deliver the policy was not caused by the agent's delay. The *Bowen* court held that the contract for life insurance was never consummated. *See id.*

Although *Bowen* bears some factual similarity to the Dohanyos' case, there is a controlling distinction. In *Bowen*, there was no indication that the failure to deliver the policy prior to Bowen's death was the result of the insurer's dalliance. *See id.* In contrast, the Dohanyos' case bears a greater factual similarity to *Unterharnscheidt v. Missouri State Life Ins. Co.*, 160 Iowa 223, 138 N.W. 459 (1912), which was cited approvingly by the *Bowen* court. *See Bowen*, 144 N.W. at 546–47. In *Unterharnscheidt*, the insurance company mailed a life insurance policy to its agent

for delivery to the applicant, so that the policy's delivery requirement could be satisfied. The agent was out of town when the policy arrived at his office, and he had made no arrangements for delivery of the policy in his absence. Shortly thereafter, but prior to the agent's return, the applicant died. The insurance company was held liable on the policy. *See Unterharnscheidt*, 138 N.W. at 465.

Referring to *Unterharnscheidt*, the Michigan Supreme Court stated, "we fully indorse the controlling, fundamental principle there declared that a party cannot take advantage of his own wrong nor profit by his own delinquencies, upon which ground the decision could well rest under the circumstances shown." *Bowen*, 144 N.W. at 546. In the instant case, the district court found that Aaron's policy went undelivered because of the delinquency of Prudential's agent. Thus, the Dohanyos' case is distinguishable from *Bowen*. It is controlled by the rule, endorsed by the *Bowen* court, that a party may not profit from its own delinquencies.

It is clear, in this case, that Prudential manifested inconsistent intentions. The application and acknowledgment clearly require delivery to Aaron. The June 28 notice to Aaron, requiring payment of July's premium by July 19, however, is inconsistent with Prudential's intention to enforce the delivery requirement. That notice indicated that Aaron would be covered for July if he paid the premium by July 19. And as the facts of this case demonstrate, the failure of Prudential's agent to arrange for prompt delivery of the policy, as his May 29 letter to Aaron promised, is inexcusable. We conclude, therefore, that Prudential is estopped from relying upon the delivery requirement to defeat liability.

**B**

Prudential next asserts that Aaron never accepted the policy and that he was free to reject it. Therefore, it contends that no contract was ever formed.

Mr. and Mrs. Dohanyos note that, starting June 8, payments for the policy had been deducted from Aaron's paycheck.

They contend that only the dilatory behavior of Prudential deprived Aaron of the opportunity to make the formal acceptance and that Prudential should not be allowed to profit from its own dalliance.

 The district court applied an estoppel theory. It premised its determination on its finding that Prudential drafted all of the pertinent documents and the parties agreed to July 1 as the effective date of the contract. The district court concluded that Prudential's conduct alone prevented the fulfillment of the acceptance requirement, and Prudential should not now be made the beneficiary of its own failure, which deprived Aaron of the opportunity to fulfill the acceptance requirement.

The district court's determination is correct.

> "Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability."

*Mehling v. Evening News Assoc.*, 374 Mich. 349, 132 N.W.2d 25, 26 (1965) (quoting 13 C.J. § 722, at 648). In this case, Prudential failed to deliver the policy promptly to Aaron Dohanyos, depriving him of the opportunity to fulfill the acceptance requirement. Additionally, its June 28 notice indicated that Aaron would be covered for July so long as his premium was paid by July 19, 1990. Prudential, therefore, is estopped from relying on the acceptance requirement to defeat liability here.

### C

Prudential asserts that the failure to pay the first full month's premium while Aaron was alive, by the express terms of the policy, precluded coverage. It claims that the two attempts to pay the premium after Aaron's death were ineffective. Finally, it claims that, for the following two reasons,

it did not waive or modify the payment requirement: (1) the June 28 notice requiring payment by July 19 could not modify the contract because there was no mutual consent to any modification; and (2) regardless of any modification or waiver of the due date for the first premium, the June 28 notice did not alter the requirement that the premium be paid while the insured was alive.

Mr. and Mrs. Dohanyos respond that the notice constituted a waiver of the requirement for "payment prior to the commencement of coverage." They argue that the June 28 notice operated to extend credit to Aaron until July 19, 1990. They note that Prudential was twice paid for the coverage: first, on July 16, 1990, Mr. and Mrs. Dohanyos sent Prudential a check in compliance with the June 28 notice; and second, on July 17, 1990, Valenti accepted from Aaron's employer a check that included Aaron's premium for July.

The district court determined that Prudential, in effect, waived these payment requirements. It concluded that the June 28 notice waived the payment requirements of the contract by offering to extend credit to Aaron until July 19, 1990. Because payment was twice tendered to Prudential by that time, it concluded that the payment requirements of the contract were satisfied.

Michigan law recognizes waiver, upon which the district court apparently relied. *See Federal Life Ins. Co. v. Rumpel*, 102 F.2d 120, 122 (6th Cir.1939) (construing Michigan law). In *Rumpel*, the insurer indicated to the insured that he had a thirty-day grace period, during which his policy would not lapse for nonpayment of premiums. When the insured died during the grace period, the insurer denied coverage. The court concluded that, because the insurer had taken a position inconsistent with the lapse of the policy, it waived the lapse provision. The court reasoned that

> the insurer should not insist upon a forfeiture and at the same time treat the contract as in force. The insurer, for whose benefit the forfeiture provision [for failure to pay premiums on time]

was made, has the unqualified right to waive it which need not be in writing, but may be inferred from its acts. . . .

*Id.* at 122.

██ The facts strongly support the conclusion that Prudential waived the prior-payment requirements. The June 28 notice indicated that Prudential intended to collect for a full month's worth of coverage for July, even if Aaron did not pay the premium until July 19, 1990. Additionally, on July 17, 1990, Prudential apparently collected a full month's premium from the other employees, thereby indicating its intention to provide coverage for a full month. *See id.* Because it indicated its intent to collect for a full month's coverage even if payment were not received until well into the month, and because it indicated that it would accept payment if made by July 19, 1990, we conclude that Prudential waived any provisions requiring that payment of the premium precede the commencement of coverage or that the insured pay the premium while he remained alive.

### III

The district court's grant of Mr. and Mrs. Dohanyos' motion for summary judgment and denial of Prudential's motion for summary judgment is AFFIRMED.

MERRITT, Chief Judge, concurring.

I believe that the simpler contract principle of novation covers this case. The doctrines of constructive delivery and estoppel seem unnecessary. The language in the original application requires delivery, acceptance, payment and certain conditions of health before the policy can become effective. The letter from the Prudential General Manager, Valenti, on April 25, 1990, states, however, that "the effective date of the policy will be July 1, 1990, with the first premium withheld the month of June." The first premium was withheld, and I regard this letter which was accepted by the insured without objection as a modification of the original agreement, a modification

favorable to the insured. A reasonable insured, reading the language, would expect that he will be insured on the "effective date" if the premium is withheld. There is no indication in the record that the insured in any way objected to the new arrangement stated in the April 25th letter.