Parul Ashok SHAH, Plaintiff,

v.

GENERAL AMERICAN LIFE
INSURANCE CO., a Missouri
Insurance Corp., Defendant.

No. 95–CV–75248–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 7, 1997.

Katherine Wainwright Shensky, Bloomfield Hills, MI, for plaintiff.

Arthur J. LeVasseur, Lauren J. Hammett, Detroit, MI, for defendant.

## *OPINION*

DUGGAN, District Judge.

Plaintiff beneficiary seeks a declaratory judgment requiring defendant insurance company to pay benefits under a life insurance policy. Plaintiff alleges that defendant issued a policy on the life of her mother, Manjula Mehta, in the amount of $500,000, listing plaintiff as beneficiary and the defendant received the required premium. Mrs. Mehta died on June 22, 1994 and plaintiff claims that defendant is contractually obligated to pay the insurance benefits to her.

Defendant denies any obligation to pay benefits, claiming that no binding policy of insurance ever came into existence, and, if any policy did come into existence, it was the result of fraud, or misrepresentation and thus defendant is justified in refusing to pay insurance benefits.

A non-jury trial of this case was held from October 15, 1996 through October 23, 1996. Based on the evidence presented, the Court makes the following findings of fact and conclusions of law.

Plaintiff's parents, Manjula and Prafulchandra Mehta, emigrated from India to the United States in November, 1992. Beginning in the spring of 1993, plaintiff and her husband began applying for life insurance for both of her parents. On May 10, 1993, plaintiff applied for a $1,000,000 life insurance policy for her mother from John Hancock Life Insurance Company ("John Hancock"). A policy for $500,000 of coverage was approved by John Hancock on August 31, 1993.

On May 14, 1993, plaintiff applied for a $250,000 policy on her mother with Equitable Life Insurance Company ("Equitable"). (Defendant's Exhibit 101). Equitable issued a policy which was delivered to plaintiff on August 12, 1993.

On May 24, 1993, plaintiff executed an application for a $250,000 policy of life insurance for her mother from United Presidential Life Insurance Company ("UPI"). (Defendant's Exhibit 102). UPI issued a policy effective July 14, 1993 which was delivered to Plaintiff on September 30, 1993.

On August 31, 1993, plaintiff applied for a $500,000 life insurance policy for her mother with Royal Maccabees Life Insurance Company ("Royal Maccabees").

On September 6, 1993 she applied for a $250,000 [1] policy from defendant General American Life Insurance Co. ("General American"). (Defendant's Exhibits 105 & 107). The application for insurance submitted to defendant indicates that a $250,000 policy from Pacific Mutual Insurance Company ("Pacific Mutual") was also in force. (Defendant's Exhibit 107).

The applications for insurance with Equitable and UPI were submitted to those companies through insurance agent Jeffrey Waltz. The applications for policies with John Hancock, Royal Maccabees and defendant General American were submitted to those companies through licensed insurance agent Chhaya Shah (no relation to the plaintiff).

Chhaya Shah has never been authorized by defendant to procure applications for policies through it. In procuring the application for plaintiff's mother, Ms. Shah contacted Anthony Woody, an authorized agent of the defendant. Mr. Woody provided Ms. Shah with an application for life insurance for Mrs. Mehta

---

**1.** Mrs. Mehta's application was for $250,000 of coverage; ultimately a policy for $500,000 of coverage was issued on the condition that she was insured for no more than $750,000 total.

and an authorized agent application to be completed by Ms. Shah[2]. Ms. Shah signed her name in the space marked "Licensed Agent" on the application for insurance and on the soliciting agent's certificate. Later Mr. Woody signed his name above Ms. Shah's. (Defendant's Exhibit 107).

After an incident of shortness of breath, plaintiff's mother, Mrs. Mehta, was examined by a cardiologist on October 11, 1993. (Deposition of Dr. C. Pujara, p. 6). Dr. Pujara conducted an exercise stress test on Mrs. Mehta. After ten minutes of exercise, the test was terminated because Mrs. Mehta was experiencing shortness of breath. (Plaintiff's Exhibit 6). The results of Mrs. Mehta's test indicated that she might suffer from coronary artery disease. Mrs. Mehta underwent a heart catheterization on October 22, 1993. Mrs. Mehta's catheterization revealed left ventricular diastolic dysfunction, prolapse of the posterior mitral leaflet, and 50% stenosis of the right coronary artery. Hemodynamic analysis during the procedure indicated that Mrs. Mehta had left ventricular diastolic pressure of 25mm Hg. (Plaintiff's Exhibit 6). Dr. Pujara concluded that Mrs. Mehta's condition could be managed medically, as opposed to surgically, and Mrs. Mehta was prescribed Imdur. (Deposition of Dr. C. Pujara, p. 17).

In early December 1993, Mrs. Mehta noticed a swelling in the clavicle area. On December 6, 1993, Mrs. Mehta was examined by Dr. Lakra, a general surgeon. (Defendant's Exhibit 116). Based upon his findings on examination, Dr. Lakra's clinical impression was that Mrs. Mehta had either lymphoma or tuberculosis. (Deposition of Dr. Y. Lakra, p. 8). He scheduled a CT scan for the following day. The report generated after the CT scan indicated that the swelling was likely due to lymphoma. (Defendant's Exhibit 116). A biopsy conducted on December 15, 1993 revealed that Mrs. Mehta suffered from adenocarcinoma, a metastatic cancer. (Defendant's Exhibit 116). Mrs. Mehta

received chemotherapy but succumbed to the disease on June 22, 1994. (Defendant's Exhibit 115).

Mrs. Mehta's General American policy was initially approved for $250,000 on October 1, 1993.[3] On October 20, 1993, defendant indicated a willingness to provide $500,000 in coverage provided that it would be the only policy in force (other than the Pacific Mutual policy for $250,000, which was listed as being in force on the General American application). (Defendant's Exhibit 137).[4] Mrs. Mehta's policy was not issued until November 12, 1993 when it was sent to Mr. Woody. (Deposition of Lisa Hampton, p. 33). Mr. Woody gave the policy to Chhaya Shah who delivered it to Mrs. Mehta on December 8, 1993.

■ The Declaration section of the policy, Section E, contains a provision which states:

(f) If a premium payment is not given at the same time as this application, then insurance will take effect when all of the following are satisfied:

(1) A policy is approved by the Company for issue as applied for; and

(2) The full first premium is paid; and

(3) The health and insurability of any person proposed for insurance have not changed since the date of this application.

(Defendant's Exhibit 107). On December 8, 1993, when the policy was delivered to her, Mrs. Mehta signed a "Notice and Policy Delivery Receipt," which contained the statement, "there has been no change in my health since the date of the application and/or examination for insurance." The premium payment was also made at this time. (Plaintiff's Exhibit 1B).

Defendant contends that it is not obligated to pay plaintiff benefits because the policy never became effective. Section E(f) of the policy allows coverage to take effect (when the premium is not submitted with the appli-

---

**2.** Ms. Shah never submitted the authorized agent application.

**3.** Chhaya Shah testified that plaintiff agreed with her that she should attempt to get $500,000 in coverage from General American.

**4.** The "approval" for the policy providing $500,000 in coverage was not "completed" until November 10, 1993. (Dep. of Lisa Hampton, p. 25).

cation) only after a policy is approved as applied for, the full first premium is paid and the health and insurability of the would-be insured have not changed since the date of the application. Defendant argues that because the health of Mrs. Mehta had changed prior to the payment of the premium on the date the policy was delivered, coverage under the policy never existed.

Although a policy in the amount of $250,-000 had been approved on October 1, 1993, it was not until October 20, 1993, that defendant indicated a willingness to provide $500,-000 in coverage.[5] However, as previously noted, the "approval" of this coverage was not completed until November 10, 1993. (See fn.4). The diagnosis of coronary artery disease took place on or about October 22, 1993 and the diagnosis of adenocarcinoma took place on December 15, 1993. However, the first full premium, the second condition precedent for an effective policy of life insurance, was not paid until December 8, 1993. Mrs. Mehta had been diagnosed with coronary artery disease long before this date.

▬ Under Michigan law, an insurer is estopped from relying on a delivery requirement when it has dallied in making delivery. *See Dohanyos v. Prudential Ins. Co.,* 952 F.2d 947 (6th Cir.1992); *see also Jones v. Jackson National Life Ins. Co.,* 819 F.Supp. 1372, 1376 (W.D.Mich.1993) *affirmed* 27 F.3d 566 (6th Cir.1994). However, when the insurance company has not caused a delay, it is not estopped from relying on a delivery requirement. *Bowen v. Prudential Ins. Co.,* 178 Mich. 63, 144 N.W. 543 (1913); *see also Dohanyos, supra.* Here, unlike the fact scenarios of *Dohanyos* and *Jones,* the agent was not in possession of the policy when the change of health was discovered (or, in *Dohanyos,* when the death occurred). Neither Woody (def.s' authorized agent) or Chhaya Shaw received the policy until sometime after November 12, 1993, the issue date of the policy. The "change" in Mrs. Mehta's health occurred on October 22, 1993 and this Court is satisfied that plaintiff was aware of this "change in health" on or about that date. Although an insurance company has a duty

to act with reasonable promptness on applications for life insurance, *VanKoevering v. Manufacturers Life Insurance Company,* 234 F.Supp. 786 (W.D.Mich.1964), the defendant did not breach that duty by failing to deliver the policy to the insured prior to the "change" in Mrs. Mehta's health which occurred on October 22, 1993. As previously indicated, the defendant did not even indicate a willingness to provide $500,000 of coverage until October 20, 1993 (and did not complete its approval until November 10, 1993), and based on Lisa Hampton's notes (Ex. 137, p. 2), it was awaiting information from the agent with respect to the issuance of the policy. Under the circumstances, it would have been virtually impossible for the company to have issued the policy and caused its delivery to Mrs. Mehta prior to October 22, 1993. Any delivery of the policy after October 22, 1993 would have resulted in a delivery to the insured and the first full premium being paid after the health and insurability of the insured had changed, thus precluding the policy from taking effect. (Declaration E(f), Def's Ex. 107). It is the conclusion of this Court that there was, in fact, no delay, and certainly no "unnecessary delay", between the date the policy was "approved" (whether that date was October 20, 1993—the date the company had indicated its willingness to provide $500,000 of coverage or November 10, 1993, the date Lisa Hampton testified approval was "completed") and October 22, 1993, the earliest date that it could have been delivered without Mrs. Mehta being required to disclose the "change in health." Whether or not there was an unreasonable delay, is a question of fact to be resolved by the trier of fact. *Bellak v. United Home Life Ins. Company,* 244 F.2d 623, 625 (6th Cir.1957); *VanKoevering* at 792. Therefore, defendant is not estopped from relying on the conditions precedent to the effectiveness of policy by any "delay" in issuing and delivering Mrs. Mehta's policy, because the change in Mrs. Mehta's health was known to Mrs. Mehta and plaintiff prior to any "unnecessary" delay.

---

5. In fact, Lisa Hampton's notes indicates that on 10/20, she "advised agent we would be willing to issue 500k total. He will get back with me on how we should issue/plan, etc." (Ex. 137, p. 2).

■ Even if the policy became effective, it is void ab initio due to two separate material misrepresentations. Defendant asserts that Mrs. Mehta's misrepresentation as to other insurance in force or applied for was material and thus voids the policy under M.C.L.A. § 500.2218. Under this statute, a false statement in the application may bar recovery if it "materially affected either the acceptance of the risk or the hazard assumed by the insurer." M.C.L.A. § 500.2218. In addition, "no misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract." M.C.L.A. § 500.2218(1). Paul McDaniel, defendant's vice-president of underwriting testified that no policy would have been approved if the underwriters had had knowledge of the other existing policies on Mrs. Mehta's life. Lisa Hampton, a senior underwriter gave similar testimony. (Deposition of Lisa Hampton, p. 17–23). The Court is satisfied that Mrs. Mehta's false statements regarding other insurance coverage materially affected the defendant's acceptance of risk and were material misrepresentations.

■ Plaintiff argues that even if Mrs. Mehta's omission of other coverage on the application constitutes a material misrepresentation, the policy is not void because agent Shah knew about the other coverage and her knowledge is imputed to defendant. When essential facts are disclosed to the insurer's agent, the knowledge of that information will be imputed to the insurance company and the insurance company is estopped from denial of coverage. *Howard v. Golden State Mutual Life Ins. Co.*, 60 Mich.App. 469, 231 N.W.2d 655 (1975)(citing *Hughes v. John Hancock Mut. Life Ins. Co.*, 351 Mich. 302, 311, 88 N.W.2d 557 (1958)).

Defendant contends that agent Shah's knowledge cannot be imputed to the defendant because she was not authorized to solicit applications on behalf of General American. Plaintiff points to M.C.L.A. § 500.2220, which provides:

any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the insured or

his beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured.

Under the terms of the statute, agent Shah is to be regarded as the agent of the defendant. Any knowledge agent Shah had regarding other insurance policies in force on Mrs. Mehta's life is therefore imputed to defendant General American.

Agent Shah clearly knew of at least one other policy (John Hancock) and one other application (Royal Maccabees) for life insurance for Mrs. Mehta because she had submitted the applications to the issuing life insurance companies. In May 1993, agent Shah submitted an application for life insurance for Mrs. Mehta to John Hancock. A policy issued on this application in August. One week before the General American application was submitted, agent Shah submitted an application for life insurance for Mrs. Mehta to Royal Maccabees. The Court therefore finds that agent Shah did have knowledge of some other insurance coverage and this knowledge is to be imputed to defendant General American pursuant to M.C.L.A. § 500.2220.

■ Although defendant is estopped from denying coverage based on the misrepresentations known to agent Chhaya Shah, it is not estopped from denying coverage based on the misrepresentations not known by its agent. Plaintiff has not produced evidence sufficient to persuade this Court that agent Shah had knowledge of the Equitable and UPI policies which were issued, via applications submitted by agent Jeffrey Waltz, for $250,000 of coverage apiece. Because this Court is not persuaded by the evidence presented that agent Shah had knowledge of the Equitable and UPI policies, so as to impute such knowledge to defendant and defendant denies that it had actual knowledge of either of these policies, the Court finds defendant is not estopped from denying coverage based on these misrepresentations. Because the Court accepts the testimony of Mr. McDaniel that the defendant would not have issued the policy if it had known about the additional $500,000 of coverage, Mrs. Mehta's misrepresentation regarding the $250,000 policies with

Equitable and UPI was material and thus renders her policy with defendant General American void ab initio. Therefore, plaintiff is not entitled to recovery of benefits.

██ Defendant argues that material misrepresentations regarding Mrs. Mehta's health also render its policy on her life void ab initio. On December 8, 1993, when Mrs. Mehta's policy was delivered to her by agent Shah, Mrs. Mehta signed the Notice and Policy Delivery Receipt. In signing this document, Mrs. Mehta certified that the information she recorded on the medical portion of her application remained true and correct as of the date of the signature and that there had been no change in her health since the date of the application. Defendant argues that, in fact, Mrs. Mehta had suffered two different degenerative changes in health which materially affected its acceptance of risk and the hazard it assumed.

First defendant argues that on December 8, 1993, plaintiff knew that the swelling in Mrs. Mehta's neck was at least possibly lymphoma. (Deposition of Dr. Y. Lakra, p. 10). It is unclear from the medical records, the testimony of Mrs. Mehta's treating physician, Dr. Lakra and the testimony of plaintiff when exactly the possible diagnosis of lymphoma was presented to plaintiff or her mother. The Court finds it unnecessary to determine whether the possible diagnosis of lymphoma was known to either plaintiff or Mrs. Mehta on December 8, 1993 because it is satisfied that the heart condition discovered by doctors and indicated to plaintiff and Mrs. Mehta on or about October 22, 1993 was a material change in Mrs. Mehta's health and that her certification that her health had not changed between September 6, 1993 and December 8, 1993 was a false statement.

As discussed, supra, a false statement may not bar recovery unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. M.C.L.A. § 500.2218. "No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to refusal by the insurer to make the contract." M.C.L.A. § 500.2218(1). Mr. McDaniel, vice-president of underwriting for defendant testified that had the underwriting

department known the results of Mrs. Mehta's heart catheterization, an approval decision on the application would have been postponed or declined. According to excerpts from defendant's underwriting manual, when the applicant has one major artery more than 50% occluded, an ejection fraction over 55%, and left ventricle end-diastolic pressure of 15mm Hg., the proper course of action is to postpone any action on the application if the applicant has suffered from such conditions for fewer than six months. (Defendant's Exhibit 139). On the date of her catheterization, Mrs. Mehta's right coronary artery was 50% occluded, her ejection fraction was 64% and her left ventricle end-diastolic pressure was 25mm Hg. (Plaintiff's Exhibit 6). According to the underwriting guidelines, action on an application for a person with these test results would have been postponed until April 22, 1994. (Defendant's Exhibit 139). Mr. McDaniel's testimony along with the documentary evidence indicates that the insurer would not have made a contract for insurance (in the fall of 1993) for Mrs. Mehta if it had known the results of her heart catheterization. The Court is therefore satisfied that Mrs. Mehta's certification that her health had not changed was a material misrepresentation.

Plaintiff argues that agent Shah knew of Mrs. Mehta's heart catheterization. Plaintiff testified that she gave agent Shah a copy of the cardiologist's report from that procedure. Agent Shah testified that she had no knowledge of Mrs. Mehta's heart condition or any medical testing on Mrs. Mehta during that time period. She also testified that she had never seen a copy of the catheterization report. Plaintiff's husband first testified that he gave agent Shah the report himself. Later he testified that his wife gave her the report. Finally, he testified that he thought agent Shah might have picked it up. The Court finds the evidence supports the conclusion that agent Shah did not know of Mrs. Mehta's heart condition. As a result, defendant is not estopped from denying coverage based on its reliance on the insured's material misrepresentation regarding her health.

984

### Conclusion

The Court finds that the policy of insurance on Mrs. Mehta's life failed to become effective because the first full premium was not paid while plaintiff's health was unchanged from the date of the application. Defendant is not estopped from denying coverage on this basis because it did not unnecessarily delay the issuance and delivery of the policy. This Court is satisfied that the change in Mrs. Mehta's health occurred within a reasonable time for defendant to process the policy.

Further, the Court finds that although defendant is estopped from denying coverage due to Mrs. Mehta's material misrepresentation regarding the "other insurance coverage" that agent Shah knew about, it is not estopped from denying coverage due to the material misrepresentation regarding the $500,000 of additional coverage about which agent Shah had no knowledge. Mrs. Mehta's material misrepresentation regarding this additional coverage renders her policy with defendant void and thus, even if a policy had come into existence, plaintiff would not be entitled to benefits.

Plaintiff is also barred from recovering benefits under the policy because the insured's certification that her health had not changed from the date of the application was a material misrepresentation. Defendant relied on these misrepresentations in approving the insured's application; agent Shah had no knowledge of the changes in Mrs. Mehta's health.

For the reasons set forth above, the Court hereby finds in favor of defendant and judgment shall be entered in favor of defendant. This action shall be dismissed on the merits.