# STATE OF MICHIGAN

# COURT OF APPEALS

NAJAT WAAL WEKTAFA AL-QAIZY,
Individually and as Next Friend of TABARAK
AL-QAIZY and MOHAMMED AL-QAIZY,
Minors, and WASAN AL-QAIZY,

　　　　　Plaintiffs-Appellees/Cross-
　　　　　Appellants,

v

WESTFIELD INSURANCE COMPANY,

　　　　　Defendant/Cross-Defendant-
　　　　　Appellant/Cross-Appellee,

and

FARMERS INSURANCE EXCHANGE,

　　　　　Defendant/Cross-Plaintiff-Appellee.

UNPUBLISHED
November 16, 2017

No. 332618
Wayne Circuit Court
LC No. 14-001278-NF

WESTFIELD INSURANCE COMPANY,

　　　　　Plaintiff-Appellant,

v

NAJE AL-QAIZY, NAJAT WAAL WEKTAFA
AL-QAIZY, Individually and as Next Friend of
TABARAK AL-QAIZY and MOHAMMED AL-
QAIZY, Minors, WASAN AL-QAIZY, and
HAIDER NAJE AL-QAIZY,

　　　　　Defendants-Appellees.

No. 333130
Wayne Circuit Court
LC No. 14-008478-CK

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

-1-

In Docket No. 332618, defendant/cross-defendant, Westfield Insurance Company, appeals as of right the order granting summary disposition to defendant/cross-plaintiff, Farmers Insurance Exchange, in this first-party no-fault personal injury protection (PIP) benefits case. Plaintiffs, Najat Waal Wektafa Al-Qaizy, individually and as next friend of Tabarak Al-Qaizy and Mohammed Al-Qaizy, minors, and Wasan Al-Qaizy, on cross-appeal challenge the trial court's order denying their request for no-fault attorney fees. Concurrently, in Docket No. 333130, Westfield Insurance Company as plaintiff, appeals as of right the order dismissing its complaint for declaratory relief. We affirm in the cross-appeal, vacate the orders granting Farmer's motion for summary disposition and dismissing Westfield's complaint, and remand.

## I. FACTS

This matter arises from a single motor vehicle accident that occurred on the I-275 expressway in Livonia, Michigan on July 7, 2013. On that date, Haider Al-Qaizy was driving a 2003 Ford Taurus, which is titled to Haider. His mother, Najat, was restrained in the front passenger seat. Wasan, Haider's adult sister, was a passenger in the rear seat with their minor brother, Mohammed, and minor sister, Tabarak. Haider lost control of the vehicle. The vehicle spun and flipped, striking the median, resulting in Wasan, Tabarak and Mohammed, who were not restrained, being ejected from the vehicle. All of the individuals in the vehicle incurred some form of injury, with Tabarak's being the most severe.

Naje Al-Qaizy, Najat's husband and the father of all of the adult and minor children in the vehicle at the time of the accident, maintained an automobile insurance policy with Westfield that was in effect at the time of the accident. When this policy was initially obtained, the covered vehicles were identified as a 2000 Ford Windstar, a 2002 GMC Envoy, and a 2000 Buick Century. The listed drivers were identified as Naje, Haider, and Wasan. The policy was amended several times during its coverage period to add or remove different vehicles and to add another adult child, Allaa Al-Qaizy, as a driver. On or about April 15, 2013, the policy was amended to include the 2003 Ford Taurus that was involved in the accident pertaining to this appeal, and continued to identify Naje, Haider, Wasan, and Allaa as drivers under the policy. Westfield did not pay benefits to the Al-Qaizys, asserting fraud in the procurement of the insurance policy, permitting its rescission. Due to Westfield's refusal to pay no-fault benefits, the Al-Qaizys applied to the Michigan Assigned Claims Plan and Farmers Insurance Exchange was assigned.

## II. WESTFIELD'S APPEALS

Westfield contests the trial court's grant of summary disposition in favor of Farmers, asserting the fraud and misrepresentations by Naje and his adult children permitted rescission of the insurance policy and the denial of first-party benefits. Specifically, Westfield asserts that this Court's ruling in *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 781-782; 891 NW2d 13 (2016), lv gtd 500 Mich 990 (2017), is controlling, having recognized the dissolution of the innocent third party doctrine. In addition, Westfield denies that the policy language precludes its ability to void the contract. Alternatively, Westfield contends, at the very least, that it is not obligated to pay benefits for Naje's adult children, Haider and Wasan, because they were not covered under the policy and were not domiciled with Naje at the time of the accident.

As discussed in *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012) (citations omitted):

> This Court reviews de novo a trial court's decision on a motion for summary disposition. In addition, the proper interpretation of a statute is a question of law that this Court reviews de novo. The proper interpretation of a contract is also a question of law that this Court reviews de novo.

Although not specified, because the trial court's reasons for granting summary disposition were premised on the factual sufficiency of the assertions, we determine that review is in accordance with MCR 2.116(C)(10). Specifically:

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In reviewing a grant of summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [*Williams v Enjoi Transp Solutions*, 307 Mich App 182, 185; 858 NW2d 530 (2014) (citations omitted).]

Our starting point is consideration of the insurance contract and documents pertaining to its procurement. At the time of the accident, the declarations page of Westfield's policy with Naje listed four vehicles for coverage: (1) a 2000 Ford Windstar, (2) a 2000 Buick Century, (3) a 2004 Nissan Maximum, and (4) a 2003 Ford Taurus. The drivers insured under the policy included Naje, Haider, Wasan and Allaa. Within the policy, a "family member" was defined as "a person related to you by blood, marriage or adoption who is a resident of your household." An "insured" was defined as: (1) "You or any family member for the ownership, maintenance or use of any auto[,]" and (2) "Any person using your covered auto with the expressed or implied permission of you or any family member while within the scope of such permission." In turn, "your covered auto" was defined, in relevant part, as "Any vehicle shown in the Declarations as subject to this policy form." The insurance policy also contained the following "Fraud" provision:

> A. This insurance was issued in reliance on the information provided in your insurance application.

> B. We may void coverage under this policy if you or an insured have knowingly concealed or misrepresented any material fact or circumstances, or engaged in fraudulent conduct, at the time application was made for insurance or at any time during the policy period.

> * * *

> D. We may void this policy for fraud or material misrepresentation even after the occurrence of an accident or loss. This means that we will not be liable for any claims or damages which would otherwise be covered.

E. We will not void this policy due to misrepresentation or concealment in the application if:

    1. This policy has been in effect for more than one year; or

    2. Such misrepresentation or concealment is not prejudicial to us.

F. No person who engages in fraudulent conduct shall be entitled to receive payment under this policy.

G. If we void this policy, it shall be void from its inception as if this policy never took place.

Westfield asserted in opposition to Farmer's motion for summary disposition that it was entitled to rescind the policy due to fraud and misrepresentations by Naje and his adult children in procuring the policy.[1] The alleged fraud was comprised of two components. The first pertained to Naje's adult children, Haider, Wasan and Allaa, in regards to their applications for insurance under Naje's policy for vehicles titled to them and while residing separately from Naje. Westfield asserted that the placement of the automobiles titled to Naje's adult children on his policy was fraudulent and contrary to MCL 500.3114(1), which states, in relevant part, "a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." Westfield's policy with Naje specifically excluded liability coverage "for the ownership, maintenance or use of:"

    2. Any vehicle other than your covered auto, which is:

        a. Owned by you; or

        b. Furnished or available for your regular use.

    3. Any vehicle other than your covered auto, which is:

        a. Owned by any family member; or

        b. Furnished or available for the regular use of any family member.

The second allegation of fraud or misrepresentation pertained to Naje's purported affirmation when applying for the insurance policy that the vehicles to be covered under the policy of insurance were all owned or titled to Naje.

---

[1] On appeal Westfield submits an unsigned application for the subject insurance policy as evidence of the fraud or concealment of Naje in obtaining the policy. Providing this document for the first time on appeal "constitutes an expansion of the record, and a party may not expand the record on appeal." *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005).

We first turn to the coverage issues for Haider and Wasan, both of whom did not reside with Naje. In doing so, we also assume for the moment that the policy is fully enforceable. In accordance with MCL 500.3101(1), "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." A separate subsection of this statutory provision, MCL 500.3101(2)(k), defines an "owner" to include:

> (*i*) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.

> \* \* \*

> (*iii*) A person that holds the legal title to a motor vehicle . . . for a period that is greater than 30 days.

Under MCL 500.3113, "[a] person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident . . . . (b) The person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by section 3101 . . . was not in effect."

As discussed in *Barnes v Farmers Ins Exch*, 308 Mich App 1, 5-6; 862 NW2d 681 (2014) (citations omitted):

> The primary goal of the judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first criterion in determining intent is the specific language of the statute. The Legislature is presumed to have intended the meaning it plainly expressed, and clear statutory language must be enforced as written.

> The purpose of the Michigan no-fault act, MCL 500.3101 et seq., "is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." The no-fault act, however, requires the "owner or registrant of a motor vehicle" to maintain "personal protection insurance [PIP], property protection insurance, and residual liability insurance." MCL 500.3101(1).

Consequently, with regard to Haider as the undisputed titled owner of the Taurus involved in this accident, "under the plain language of MCL 500.3113(b), when none of the owners maintains the requisite coverage, no owner may recover PIP benefits." *Barnes*, 308 Mich App at 8-9. Because the only coverage was provided by Naje, who is not an owner of the Taurus, Haider cannot receive PIP benefits under the no-fault act. *Id.* at 9.

Similarly, with respect to Wasan, because the Taurus is not covered under Naje's policy because Haider failed to maintain coverage as required under MCL 500.3101(1), benefits are not available to Wasan. In addition, Wasan is not covered under Naje's policy of insurance because, although a family relation, she does not reside in Naje's household as required for coverage under Westfield's policy.

The more complex issue arises regarding the entitlement to benefits under the insurance policy for Naje's spouse, Najet, and his two minor children, Mohammed and Tabarak. Westfield disputed coverage for these individuals, asserting a lack of clarity regarding their residence with Naje, but not disputing their blood relationship to him or that Najet is his spouse. In addition, Westfield contends that it should be permitted to void or rescind the insurance policy on the basis of fraud or misrepresentations made in its procurement.

Beginning with the alleged fraud of Haider in placing the 2003 Ford Taurus under Naje's policy of insurance, Westfield disputes that Haider could have provided a title indicating his ownership of the vehicle and his correct address when applying for the insurance because the Secretary of State would not issue a title until proof of insurance was obtained. However, Haider produced a "title assignment by seller" for the vehicle, which was subsequently submitted to the Secretary of State and which indicated Haider's correct address and purchase of the vehicle when applying for inclusion of the Taurus on Naje's insurance policy. And Westfield failed to come forward with any evidence disputing this document. A nonmoving party is not permitted to simply rest on allegations or denials, but rather must come forward with evidence demonstrating that a material issue of fact is in dispute requiring resolution at trial. *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), citing MCR 2.116(G)(4).

We conclude that there is a genuine issue of material fact as to whether fraud or misrepresentation in procuring the policy occurred. On the one hand, Haider testified that he applied to have the Taurus on Naje's policy because it was less expensive than procuring his own, even though he did not live with Naje. On the other hand, the document purportedly provided by Haider in applying for the insurance recites his correct address as being different from that of Naje and indicating that Haider is the titled owner of the vehicle. It is difficult to construe these representations as being fraudulent as a matter of law, particularly since Westfield relies on their accuracy in its denial of insurance coverage. Haider's alleged fraud is further called into question through the equitable estoppel arguments presented by the Mourer-Foster Insurance Agency and Haider. Mourer-Foster and Haider, in the trial court, provided documentary and testimonial evidence indicating that Naje's adult son, Allaa, approximately one year before this accident, had procured insurance on the same policy for a vehicle that was titled to Allaa while residing apart from Naje. Despite these discrepancies, which are similar to those now relied upon by Westfield, Allaa's claims under the insurance policy were paid by Westfield.[2]

---

[2] A "blameless contracting party [may] avoid its contractual obligations" because of fraud. *Hyten*, 491 Mich at 570. Based on principles of agency, however, "[w]hen essential facts are disclosed to the insurer's agent, the knowledge of that information will be imputed to the insurance company and the insurance company is estopped from denial of coverage." *Shah v Gen American Life Ins Co*, 965 F Supp 978, 982 (ED Mich, 1997), aff'd *Shah v Gen American Life Ins Co*, unpublished order of the United States Court of Appeals (CA 6, 1998) (1998 WL 777994). See also *Al-Talaqani v Liberty Mut Gen Ins Co*, ___ F Supp 2d ___, ___ (ED Mich, 2016), (2016 WL 4415239); slip op at 4, citing *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517-518; 540 NW2d 480 (1995) ("Defendant is not entitled to rescind the policy if it was

Westfield's listing of Haider and other adult children of Naje as drivers with their titled vehicles on Naje's policy, when viewed in conjunction with Westfield's payment of Allaa's claims under similar circumstances, serves to support Haider's and Naje's assertions that in applying for inclusion of these individuals and vehicles on Naje's insurance policy, that Haider, his adult siblings, and Naje were unaware of engaging in an impropriety. However, the foregoing facts were disputed by the parties, yet the trial court determined as fact that "Haider, when he came in for the Taurus, which is the subject of the accident in this case he presented an assignment of the title by the seller that sold the car in Lansing." Because a genuine issue of material fact existed with regard to Westfield's claims of fraud or misrepresentation, which were denied by the Al-Qaizys, the trial court erred in granting summary disposition.

A similar problem arises with Westfield's claim regarding the fraud committed by Naje in completing the application for the insurance policy and with regard to the disputed ownership and coverage of the Windstar under the policy. With reference to the availability of coverage under Naje's insurance policy for the Windstar, a dispute existed, with Westfield asserting that the vehicle was titled to Allaa, but Allaa indicating that Naje had both possession and almost exclusive use of the vehicle for an extended time period, thus rendering Naje the "owner" of the vehicle in accordance with MCL 500.3101(2)(k)(*i*) (statutorily defining an "owner" as "[a] person . . . having the use of a motor vehicle . . . for a period that is greater than 30 days").

Once again, the trial court appears to have granted summary disposition despite the existence of a material factual dispute regarding these claims, necessitating remand to the trial court. The resolution of these factual disputes is integral to a determination of whether Westfield would be entitled to void or rescind the policy of insurance. As discussed by our Supreme Court in *Hyten*, 491 Mich at 557-558, "[f]raud in the procurement of the contract may be grounds for monetary damages in an action at law . . . or, . . . grounds to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation[.]" A question for resolution, following a determination of the validity of Westfield's assertion of fraud by Naje, is whether it was permissible for Naje to obtain insurance on the Windstar, and if Westfield is bound to fulfill its contractual obligation with respect to responsibility for payment of the benefits to Najet, Mohammed, and Tabarak under the insurance provided for this vehicle.[3]

---

aware of the misrepresentation at the time it issued the policy. Defendant cannot have its premiums and deny coverage too."). While federal cases "are not binding, they may be persuasive." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 717; 742 NW2d 399 (2007).

[3] Although on appeal the parties are focused on the innocent third party doctrine, the issue has been made functionally irrelevant by *Bazzi*. If Westfield is unable to establish fraud in procuring the insurance contract, the insurance contract will not be subject to rescission and the innocent third party doctrine does not arise. Alternatively, even if Westfield is able to rescind its contract with Naje, the innocent third party doctrine is no longer available to permit Najet, Mohammed and Tabarak to receive benefits under the insurance policy. According to *Bazzi*, 315 Mich App at 781-782, "if an insurer is able to establish that a no-fault policy was obtained through fraud, it

Finally, Westfield disputes Farmer's and Haider's argument that it is precluded from voiding the policy due to fraud based on policy language that rescission will not occur if the policy has been in effect for more than one year. Again, before this language becomes relevant, the fraud issue must be resolved in the trial court. In addition, Farmers and Haider fail to provide the entire context of the policy language and other subsections of this provision indicating that a "misrepresentation or concealment" will not void the policy if it "is not prejudicial" to Westfield. But Westfield has argued that the misrepresentations of Naje and his adult children are prejudicial because they were able to obtain the insurance at a lower cost than would have been charged had the ownership of the vehicles and residence of the individuals been accurately provided. Whether Westfield was prejudiced, should fraud be established, involves yet another factual determination for the trier of fact.[4]

## III. CROSS-APPEAL

On cross-appeal, the Al-Qaizys contest the trial court's denial of their request for no-fault attorney fees. The Al-Qaizys assert that Westfield received prompt notification of the claims, yet unreasonably refused and delayed in remitting the payment of benefits.

In accordance with *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008):

> The Court reviews de novo issues of statutory interpretation. The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. This Court reviews de novo questions of law, but we review findings of fact for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. Moreover, we review a trial court's award of attorney fees and costs for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. [Citations and quotation marks omitted.]

The no-fault act's recognized purpose is to "provid[e] assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 197; 870 NW2d 731 (2015). In accordance with MCL 500.3148(1):

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are

---

is entitled to declare the policy void *ab initio* and rescind it, including denying the payment of PIP benefits to innocent third parties."

[4] Additionally, should it be determined fraud or misrepresentation did occur, the trial court will have to determine if Westfield has satisfied the preconditions to obtaining rescission, including returning the paid premiums. See, e.g., *Lash v Allstate Ins Co*, 210 Mich App 98; 532 NW2d 869 (1995).

overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

This statutory provision was examined in *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999):

When determining whether attorney fees are warranted for an insurer's delay to make payments under the no-fault act, a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. When an insurer refuses to make or delays in making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay. [Citations omitted.]

"A no-fault insurer may have reasonably delayed or refused to pay a claim even if it is later determined that the insurer is required to pay the benefits." *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 588; ___ NW2d ___ (2017). As discussed in *Adanalic*, 309 Mich App at 195 (citations and quotation marks omitted; alterations in original):

MCL 500.3148 establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained. . . . Second, the insurer must have unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [A]n insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.

Westfield contended, from the time the lawsuits were initiated, that it was not obligated to pay benefits premised on fraud in the procurement of the insurance policy, which permitted rescission of the contract. This comprises a "factual uncertainty," *id.*, serving to justify a refusal or delay in the payment of benefits. Further, with regard to the benefits claimed by Haider and Wasan, an insurer's refusal to remit the payment of no-fault benefits cannot be construed to be unreasonable if it is "later determined that the insurer was not required to pay those benefits." *Moore*, 482 Mich at 527. Had this dispute been premised solely on the issue of the priority of the insurers for payment, it would be deemed unreasonable for Westfield to have refused payment of the benefits. *Adanalic*, 309 Mich App at 197 (citation omitted). While the priority of the insurers was a concern, the germane issue pertained to fraud and the ability of Westfield to rescind the insurance policy. As such, the delay or refusal to remit payment cannot be deemed to be unreasonable.

Affirmed in part, vacated in part and remanded to the trial court for further proceedings

consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher