**DAMACH, INC., Plaintiff–Appellant,**

v.

**CITY OF HARTFORD and Abraham Ford, Zoning Administrator & Zoning Enforcement Officer for the City of Hartford, Defendants–Appellees.**

**Docket No. 99–9319.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 2000.

Decided Dec. 28, 2000.

Daniel A. Silver (Brian M. Silver), Law Office of Daniel A. Silver, New Britain, CT, for Plaintiff–Appellant.

Ann F. Bird, Assistant Corporation Counsel, City of Hartford, Hartford, CT, for Defendants–Appellees.

Before CARDAMONE, MINER, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Damach, Inc. ("Damach") appeals from a judgment of the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge) dismissing a claim brought under 42 U.S.C. § 1983 seeking declaratory and injunctive relief from enforcement of a 1994 amendment to the Hartford Municipal Zoning Code prohibiting adult cabaret in the B–1 zoning district. The district court never addressed Damach's allegation that the zoning amendment violates its First Amendment rights by banning adult cabaret because the district court concluded that adult cabaret had never been a permitted use under the Hartford Municipal Zoning Code. Because we find the record insufficiently developed to support conclusive findings regarding whether adult cabaret was permitted in Hartford prior to the 1994 zoning amendment, we remand for development of the record to enable the district court to provide a more detailed analysis of the matter.

## BACKGROUND

On July 11, 1988, the City of Hartford ("Hartford") enacted a zoning ordinance which eventually was codified as Section 35–921 of the Hartford Municipal Code ("HMC"). The amendment allowed "Adult Establishments" in three zoning districts: I–1, I–2, and C–1. At the same time, another ordinance was enacted, eventually codified under Section 35–2, which defined an adult establishment as an "adult bookstore, adult mini-motion-picture-theater or adult motion picture theater, or any combination thereof." In 1994, Hartford enacted another zoning amendment which refined the definition of "Adult Establishments" by specifying that it also included "Adult Cabaret." Adult cabaret, in turn, consisted of "a nightclub, bar, restaurant, or similar establishment that regularly features live performances that are characterized by the exposure of specific anatomical areas or by specified sexual activities."

Meanwhile, in 1993, Damach leased a property in the B–1 zoning district, and in November of that year applied for a café liquor permit. Although initially denied, litigation in the Connecticut state courts secured Damach its liquor license. Damach began presenting adult entertainment at its establishment, and in 1996, Hartford issued a notice of violation of its zoning ordinances. Damach appealed the notice first to the Hartford Zoning Board of Appeals and then to the Connecticut Superior Court. Damach lost its appeal in state court and subsequently sought relief in the United States District Court for the District of Connecticut, alleging infringement of its First Amendment rights.

While adult theaters (and speech in general) may be regulated, such regulation may only occur where the speech to be regulated has secondary effects and it is the secondary effects that the regulation is actually targeting. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Damach argued that the amendment prohibiting adult cabaret violated First Amendment jurisprudence because it failed to establish, in its factual findings, that the zoning amendment's purpose was not primarily to restrict free speech. The district court, however, found that adult entertainment had always been prohibited in the area where Damach hoped to open its adult cabaret because zoning ordinance § 35–6 states: "No building or structure shall be ... used, designed or arranged for any purpose other than the uses permitted in the district in which the building or structure or land is located ..." Thus, reasoned the district court in dismissing Damach's complaint, the "alleged failure to create a record to sustain, factually, adverse secondary effects of the permitted use cannot be a basis for finding the prohibition violative of the First Amendment when the violation, if there be one, is not the result of the amendments but another enactment."

Damach filed a Motion for Reconsideration and for a New Trial. The district court granted the Motion for Reconsideration but denied Damach a new trial. Damach argued that the district court's prior decision had ignored a stipulation of fact entered into by both parties to the suit which stated that in 1993, adult cabaret was a permitted use in the B–1 zoning district. The district court noted that the stipulation pertained to a matter of law which was properly within the court's province, and thus held that its prior decision would stand.

On October 21, 1999, Damach appealed to this court.

## DISCUSSION

On appeal, Damach argues a number of points: that the district court was bound by the stipulation, that the district court was bound by the law of the case, and that the district court was bound by issue preclusion. We do not reach the merits of any of these arguments because we conclude that a remand is necessary to allow a more detailed analysis by the district court of whether adult cabaret was a permitted use in the B–1 zone prior to the 1994 amendment.

HMC § 35–6 states that "No building or structure shall be ... used, designed or arranged for any purpose other than the uses permitted in the district in which the building or structure or land is located...." The district court relied on this provision in deciding both that Damach and Hartford were mistaken in believing that adult cabaret was a permitted use in the B–1 zone prior to the 1994 amendment and that any adult entertainment was permissible prior to the 1988 amendment defining "Adult Establishments." As Judge Dorsey explained, "Until 1988, there was no provision for adult entertainment in any zone and thus plaintiff's proposed adult cabaret use, which was not listed as a permitted use, was not permitted." Because Damach and Hartford had stipulated that prior to 1994, adult cabaret was a permitted use in the B–1 district, they were unprepared for this turn in the district court's reasoning. Judge Dorsey noted that although "plaintiff alleges an adult cabaret was a permitted use in the B–1 district ... no authority is cited, nor argument made, for that being the case prior to 1988."

Judge Dorsey may well be correct that adult cabaret was never permitted in the B–1 district. However, the parties to this case should have an opportunity to present any relevant authorities and offer argument about whether and when adult cabaret was permitted in the B–1 zone, and. why they stipulated to their particular conclusion on this point. If, prior to 1988,

there was no provision for adult entertainment anywhere, that may have been because such a category simply did not exist. What became an "Adult Bookstore" with the 1988 amendment could well have been, prior to 1988, simply a bookstore. What became an "Adult Motion Picture Theater" in 1988 was, before 1988, simply a motion picture theater. In other words, the district court may be assuming that the category of "Adult Establishment" had always existed and that adult movie theaters, for example, were always distinguishable from other theaters—at least in the eyes of the zoning code. But one would never assert that although the HMC allows "Motion picture theaters," it therefore does not allow motion picture theaters that specialize in showing foreign or animated films. A motion picture theater is a motion picture theater, and the fact that one theater shows films with a content easily distinguishable from the content of films shown in other theaters would not be grounds for seriously contending that, based on the difference in content, one theater was not actually a "Motion picture theater" within the terms of the HMC.

The 1988 amendment, viewed in this light, may not have for the first time permitted adult establishments in certain districts by lifting a "universal ban." Rather, the 1988 amendment could have provided a way, based on content, to distinguish some bookstores and theaters from others. Thus, while motion picture theaters continued to be a viable use in the B–1 district, after the 1988 amendments, motion picture theaters with adult content were now prohibited. Similarly on this view, the 1994 amendment, far from being redundant, addressed a real "loophole" in the definition of "adult establishments" by extending the definition's reach to include "adult cabaret." The category provided a way to distinguish some kinds of nightclubs, bars and restaurants from others based on the activities occurring there. Adult cabaret is defined as: "a nightclub, bar, restaurant, or similar establishment that regularly features live performances" of an adult na-

ture. Thus, prior to the 1994 amendment, the use of an establishment for the activities henceforth understood as adult cabaret could have been permitted under the guise of the use of a place as a 'nightclub, bar, restaurant, or similar establishment.'

In short, it is not clear that HMC § 35–6 on its own allows one to confidently hold that adult cabaret was never permitted in Hartford's B–1 district. Nevertheless, as the district court made clear, there was not much of a record to go on given that Damach failed to offer authorities or arguments showing adult cabaret was permitted in the B–1 zone—or permitted anywhere—either at the original trial or, when it should have, upon moving for reconsideration. Given the chance, Damach might be able to show that other establishments have, in the past, carried on cabaret or even adult cabaret under the guise of a different permitting use in the HMC. If so, it might then be proper for the district court to reach Damach's contention that the 1994 amendment represents an infringement upon its First Amendment rights.

## CONCLUSION

For the foregoing reasons, we remand to the district court and suggest it seek additional briefing by the parties on the question of whether adult cabaret was a permitted use under the Hartford Municipal Zoning code prior to the 1994 zoning amendment and why they stipulated to such, in order to provide the district court with a record which will, in turn, enable it to offer a more detailed and conclusive analysis of the matter.