David P. KERWIN, Plaintiff–Appellee,

v.

### THE PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 99–2313.

United States Court of Appeals, Sixth Circuit.

March 1, 2001.

Before MERRITT and COLE, Circuit Judges; HOOD, District Judge.*

OPINION

COLE, Circuit Judge.

Defendant–Appellant The Paul Revere Life Insurance Company ("Paul Revere") appeals the district court's October 28, 1999, order granting the motion for summary judgment of Plaintiff–Appellee David Kerwin ("Kerwin"), and seeks a remand of this case for trial. The underlying dispute stems from Paul Revere's failure to pay monthly disability payments to Kerwin under an insurance policy entered into by it and Kerwin after Kerwin alleged that the onset of Crohn's disease prevented him from returning to his practice as a full-time criminal defense attorney. The district court found that Paul Revere failed to put forward evidence creating a genuine issue of material fact as to the question of whether Kerwin's Crohn's disease had rendered him "totally disabled" within the meaning of the policy, and thus granted summary judgment in favor of Kerwin. The district court also denied, in part, Paul Revere's motion for summary judgment and ordered Paul Revere to pay Kerwin: (1) statutory interest, pursuant to Mich. Comp. Laws Ann. § 500.2006, because his claim for benefits was never reasonably in dispute, and (2) attorneys' fees, pursuant to Mich. Comp. Laws Ann. § 445.911(2) (West 2000), in an amount to be determined by the court after Kerwin filed a formal fee petition.

* The Honorable Joseph M. Hood, District Judge for the Eastern District of Kentucky, sitting by designation.

Because Paul Revere failed to submit sufficient evidence disputing Kerwin's assertion that he was totally disabled, the district court properly granted Kerwin's motion for summary judgment. We AFFIRM the district court on this point. The district court erred, however, in assessing Paul Revere statutory interest, as Kerwin's claim was reasonably in dispute. We therefore REVERSE on this point. Finally, we do not believe that the record before the district court was sufficiently developed to support the district court's award of attorneys' fees, and therefore, VACATE the order of the district court on this point and REMAND this case for further proceedings.

## II. BACKGROUND

David Kerwin worked as a criminal defense attorney from 1972, when he was admitted to practice, until 1978, when he was elected to the first of three terms as a judge on the Detroit Recorder's Court bench. In 1994, Kerwin stepped down from the bench to return to criminal trial work. From May 1994 through August 1996, he and his then-wife, Ada Kerwin, who is also a lawyer, ran a two-person criminal firm, Kerwin & Kerwin, P.C.[1]

In 1995, Kerwin spoke with broker Darlene Hermann and inquired about taking out a policy to insure himself against the risk of disability. Hermann advised Kerwin to purchase "the broadest, best type of coverage," and recommended that he obtain "own occupation" disability insurance from Paul Revere. She allegedly informed Kerwin that "disability insurance was 'own occupation' disability insurance and ex-

plained to him that in the event he was disabled from performing the important duties of his occupation, i.e., trial attorney, a claim could be made against the policy." Based on this information, Kerwin entered into an "own occupation" policy with Paul Revere. Policy No. 0127240310 ("the Policy"), issued effective June 15, 1995, provided in relevant part:

> The Paul Revere Life Insurance Company will pay the benefits provided in this Policy due to Injury or Sickness.
>
> \*    \*    \*    \*    \*    \*
>
> "Your Occupation" means the occupation or occupations in which you are regularly engaged at the time disability begins.
>
> \*    \*    \*    \*    \*    \*
>
> "Total Disability" means that because of Injury or Sickness:
>
> a.   You are unable to perform the important duties of Your Occupation; and
>
> b.   You are receiving Physician's Care.

Under the Policy, Kerwin, in the event of a total disability, would be entitled to a maximum monthly amount of $6,400 in benefits, with automatic increases of $200 per month.

In July 1996, Kerwin was diagnosed with "perforating Crohn's colitis," an incurable gastrointestinal disease.[2] Kerwin alleges that the constant pain associated with the disease prompted him to transfer his cases to other criminal lawyers and to refund a portion of his fee to several of his clients when he could no longer continue to represent them. When medication failed to relieve these symptoms, Kerwin underwent a colostomy in January 1997, and a second surgical procedure in October 1998.

---

1.  The Kerwins separated in August 1996, and Kerwin & Kerwin, P.C., was dissolved in October 1996.

2.  Kerwin suffers from abdominal cramping, diarrhea, fatigue, diminished strength and

low mobility. These symptoms, which are exacerbated by stress, prevent him from standing or sitting for an extended period and require him to nap frequently and take various medications.

He has had no active Crohn's disease since February 1997, although, like all patients with Crohn's disease, he is at risk for a recurrence.

On January 24, 1997, Kerwin filed a claim with Paul Revere under the Policy for total disability benefits stemming from his alleged inability to work as of July 15, 1996, which Paul Revere paid while it investigated his claim. Paul Revere continued payments until Kerwin began full-time employment as a visiting Wayne County Circuit Court judge in February 1997, a temporary position in which he presided over a criminal docket on a per diem basis. Paul Revere's investigation revealed that: (1) Kerwin made no attempt to return to his trial practice after the January 1997 colostomy; and (2) Kerwin accepted a position as a visiting judge, not because of a disability, but because he had been "miserable" practicing law and had lost his desire to continue with private practice. In June 1998, on the basis of its findings, Paul Revere denied Kerwin's claim:

> [W]e have determined that it was your choice to return to work as a visiting judge verses [sic] trying to make any reasonable accommodations to return to work as a trial attorney on either a part-time basis or with a reduced case load. Therefore, we will be considering your claim under the Residual Disability Benefit of your Policy, since we believe you are capable of working as a trial attorney on a part-time basis or with a modified work schedule.

Kerwin initiated the instant diversity action against Paul Revere in the United States District Court for the Eastern District of Michigan on September 24, 1998, setting forth claims for breach of contract (Count One), and estoppel (Count Four), and seeking the following relief: a declaration of the parties' rights and obligations under the Policy (Count Two), specific performance (Count Three), treble damages (Count Five), statutory interest (Count Six), and attorneys' fees (Count Seven). At the close of discovery, on June 14, 1999, Paul Revere filed a motion for summary judgment, and Kerwin filed a motion for partial summary judgment as to Counts One, Two, and Three. The district court granted Kerwin's motion in its entirety on September 24, 1999, and issued a final judgment on October 28, 1999, ordering, *inter alia*, Paul Revere to pay Kerwin $198,000 in benefits under the Policy for the period from April 30, 1997, through October 29, 1999, and an additional $6,600 per month for as long as Kerwin remains totally disabled. The district court also ordered Paul Revere to pay attorneys' fees incurred by Kerwin and $31,580.29 in statutory interest on unpaid disability benefits. From this judgment Paul Revere now appeals.

## III. DISCUSSION

### A. Coverage

We review de novo the district court's grant of summary judgment in favor of Kerwin, *see Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir.1997), and, like the district court, we view the facts in the light most favorable to Paul Revere, the non-movant, drawing all reasonable inferences in its favor, *see 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state courts. *See Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir.1996).

Paul Revere concedes that if Kerwin is unable to continue work as a trial attorney, then he is entitled to benefits under the Policy. Its principal argument is that the district court had before it conflicting information on the question of whether Ker-

win was able to perform the requisite duties of a trial attorney, and thus, improperly granted Kerwin's motion for summary judgment. In support of its position, Paul Revere urges the following: (1) whether an insured is "totally disabled" under an insurance policy is a question generally reserved for a jury; (2) the district court failed to inquire into the specific duties of Kerwin's prior criminal trial practice; and (3) the district court disregarded evidence that Kerwin's failure to return to his trial practice stemmed from his dissatisfaction with the work, and not from the effects of Crohn's disease. All of Paul Revere's arguments lack merit.

### 1. Total disability as a jury question

█ While it is true that some courts, as Paul Revere submits, have suggested that interpretation of an insurance policy's "total disability" provision is generally a jury question, see, e.g., Lewis v. Paul Revere Life Ins. Co., 80 F.Supp.2d 978, 988 (E.D.Wis.2000); Sebastian v. Provident Life & Accident Ins. Co., 73 F.Supp.2d 521 (D.Md.1999); Ames v. Provident Life & Accident Ins. Co., 942 F.Supp. 551, 556 (S.D.Fla.1994). Michigan courts have declined to set forth a blanket rule requiring the submission of such a question to a jury, and have, on several occasions, disposed of such cases on summary judgment, see, e.g., Chalmers v. Metro. Life Ins. Co., 86 Mich.App. 25, 272 N.W.2d 188, 192 (Mich.Ct.App.1978) (affirming trial court's grant of partial summary judgment in favor of insured on a finding that he was totally disabled within the meaning of the relevant policy). Paul Revere's argument of this point, therefore, is not dispositive of the question before us.

### 2. District court's failure to consider nature of Kerwin's pre-Crohn's practice

Paul Revere next argues that the district court erred when it determined that "the nature and extent of plaintiff's legal practice from 1994 to 1996 are not at issue in this case." In fact, Paul Revere contends, the nature and extent of Kerwin's legal practice during the pre-Crohn's period are precisely what the district court should have considered when evaluating Kerwin's motion for summary judgment. Instead, Paul Revere asserts that the district court improperly credited the self-serving testimony of Kerwin; the medical conclusions of Kerwin's treating physician, Dr. Jason Bodzin, which were founded solely upon Kerwin's own account of the stresses of his prior trial practice; and the testimony of Kerwin's witnesses, which, unlike that of Ada Kerwin, was not based on personal knowledge of Kerwin's actual duties. In support of its argument, Paul Revere relies on the testimony of Ada Kerwin, who testified that Kerwin rarely tried cases—a total of eight while he was with the firm—and actively sought opportunities to secure plea agreements to avoid trial; when he did go to trial, he generally did not work during the evening hours. He never worked a full week at the office, often ignored telephone calls from clients, spent work days at local coffeehouses smoking cigarettes, and engaged in other recreational activities during business hours. If the district court had properly considered the testimony of Ada Kerwin, Paul Revere contends, it would have found a genuine issue of material fact as to whether Kerwin's former trial practice was actually less stressful than the visiting judge position he currently holds or the permanent judge position he now seeks.

█ Paul Revere's argument is without merit. The district court did consider the nature and extent of Kerwin's practice before his diagnosis, but nevertheless concluded that such testimony was not materi-

al to the question of whether Kerwin is totally disabled.[3] While the district court perhaps overstated its point—the nature and extent of Kerwin's prior practice are relevant inasmuch as they shed light on the functions of a trial attorney, the occupation for which the Policy was issued—it never needed to determine the extent to which Kerwin's post-Crohn's practice differed from that prior to his diagnosis, because there was abundant evidence put forward by Kerwin *and Paul Revere* that Kerwin was unable to perform the important functions of a trial attorney.

■ The district court had before it the unrebutted testimony of several witnesses that Kerwin can no longer perform the "important duties" of a trial attorney.[4] Thus, the burden rested with Paul Revere to set forth evidence that created a genuine issue of material fact as to this question. The strongest piece of evidence put forward by Paul Revere in opposition to Kerwin's claim concerned whether Kerwin's failure to return to private practice was actually prompted by his disease. As discussed below, however, even that evidence failed to create a genuine issue of material fact.

### 3. District court's failure to consider Kerwin's reasons for abandonment of trial practice

■ Paul Revere argues that there is a genuine issue of material fact as to whether Kerwin's failure to return to his criminal trial practice was motivated by "a lifestyle decision to return to a more prestigious, more lucrative, less uncertain, [sic] position on the Wayne County Circuit Court bench." In support of its position, Paul Revere points to the following: (1) Kerwin's decision, less than one month after his 1997 colostomy, to accept an appointment as a visiting judge, which, pursuant to the relevant ethics guidelines, precluded him from attempting a return to private practice; (2) Kerwin's statement that he was "miserable" practicing law, coupled with his relative lack of success at private practice; (3) Kerwin's refusal to discontinue smoking or, on the advice of his physician, to consult a stress-reduction counselor, even though both smoking and stress are known triggers of Crohn's disease; (4) Kerwin's current work schedule as a visiting judge, which is longer than that of his former trial practice, and which may entail his driving up to two hours each way to a

**3.** Paul Revere suggests that the district court erred by disregarding Ada Kerwin's testimony, the only direct evidence concerning the duties performed by Kerwin prior to his diagnosis with Crohn's disease. Ada Kerwin's testimony, however, has no bearing on whether Kerwin, after his diagnosis, was able to perform the "important duties" of a trial attorney, as the Policy requires. Even if Kerwin were, as Ada Kerwin suggests, a lazy, financially unsuccessful trial attorney before his diagnosis, he nevertheless would be entitled to recovery under the Policy if Crohn's disease left him unable to perform the functions of a trial attorney.

**4.** Criminal defense attorney David Griem opined that "Kerwin no longer has the stamina to try a case, cannot stand or sit for any lengthy periods of time, and cannot ... be exposed to the intense pressure that accompanies the highly-stressful situations that arise in [a criminal defense] practice." Visiting judge and former trial lawyer James Thorburn observed that although Kerwin can adequately serve as a judge, he cannot perform the "more physically demanding and strenuous job" of a criminal defense attorney. Dr. Larry Cignoli stated that "I don't know if measures could be taken to lessen the stressful situations of a trial lawyer ... that would make it possible [for Kerwin] to resume that [occupation]." Dr. Jason Bodzin, Kerwin's physician, "suggested to [Kerwin] that he change his occupation, and that [that] kind of stress was not conducive to a patient healing well with Crohn's disease and maintaining a good state of health."

judicial district; and (5) Kerwin's two prior applications for appointment to permanent judicial positions, in which Kerwin never expressed any health-related concerns.

Paul Revere's suggestion that Kerwin's position as a visiting judge was more prestigious and financially more lucrative than his position as a criminal defense attorney is not supported by the record. The unrebutted testimony of David Griem was that Kerwin, prior to his diagnosis, was not, as Paul Revere suggests, an unsuccessful criminal defense attorney who was miserable in his practice, but "a highly competent trial lawyer, [who] was routinely referred significant cases by some of the best-known criminal defense attorneys in Detroit ... [and whose] reputation in the criminal defense community enabled him to ask and obtain fees from clients commensurate with fees charged by the top trial attorneys in the area." Even Ada Kerwin, on whose testimony Paul Revere relies, conceded that Kerwin received referrals from highly regarded members of the Detroit criminal bar.

Any argument that Kerwin's role as a visiting judge is equally if not more stressful than his prior criminal practice (thereby suggesting that stress reduction was not Kerwin's real motivation for leaving it) is also belied by the record. The district court had before it the unrebutted testimony of James Thorburn that "the most stressful work requiring excellent health and good physical condition is that of the criminal defense lawyer," and that "a trial attorney in a criminal case has a much more physically demanding and strenuous job than does a judge." Thorburn's testimony was in fact confirmed by the findings of Paul Revere's own personnel. Paul Revere's career consultant suggested that "[w]hile being a judge can be somewhat stressful, it is much less so that [sic] the

position of litigator or lawyer that is defending or prosecuting a case." Paul Revere's in-house rehabilitation specialist noted that "the level of stress is much less in the position of a visiting judge as compared to a trial attorney."

### 4. Conclusion

■ Paul Revere set forth no evidence to create a genuine issue of material fact on the question of whether Kerwin made a "lifestyle decision" to abandon private practice. While it is true that in evaluating a motion for summary judgment, we view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmovant, see 60 Ivy Street Corp., 822 F.2d at 1435, the nonmovant still must present specific facts to demonstrate that there exists a genuine issue for trial, and "must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury." Goldstein v. Lincoln Nat'l Life Ins. Co., 970 F.Supp. 598, 602 (E.D.Mich.1997); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."). Paul Revere's failure to put forward expert testimony, affidavits, or other evidence on the question of whether Kerwin is able to perform the "important duties" of a trial attorney permitted the district court to conclude that Kerwin is "totally disabled." Summary judgment in favor of Kerwin was therefore appropriate.

### B. Statutory Interest

Pursuant to Mich. Comp. Laws Ann. § 500.2006, a district court may award statutory interest to an insured when an insurer fails to provide disability benefits,

pursuant to the relevant policy, for a claim that is "not reasonably in dispute." Specifically, the statute provides that:

A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant, the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

Mich. Comp. Laws. Ann. § 500.2006.

■ Paul Revere now seeks to vacate the district court's assessment of a 12% interest penalty and argues that the district court's conclusion that there was no reasonable dispute is unsupported by the record. In response, Kerwin sets forth the following arguments: (1) the Michigan Supreme Court's decision in *Yaldo v. Northpointe Ins. Co.*, 457 Mich. 341, 578 N.W.2d 274 (Mich.1998), allows for the assessment of statutory interest against an insurer *regardless* of whether a claim is reasonably in dispute; and, (2) even assuming that a reasonable dispute were a necessary precondition, the district court properly concluded that there was no reasonable dispute in this case in light of Paul Revere's "unsubstantiated position that Plaintiff was not totally disabled."

### 1. No reasonable dispute required

While it is true that the Michigan Supreme Court stated in *Yaldo* that "[w]here the action [to recover interest, pursuant to M.C.L.A. § 500.2006(4) ] is based solely on

contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute." 578 N.W.2d at 277 n. 4, recent decisions have called into question the continued vitality of this rule, *see, e.g., Society of St. Vincent De Paul v. Mt. Hawley Ins. Co.*, 49 F.Supp.2d 1011, 1020 (E.D.Mich.1999) ("[T]he *Yaldo* majority's interpretation of the penalty interest statute was 'merely dictum,' did not establish a rule of law with regard to interpretation of [Mich. Comp. Laws Ann. § 500.2006], and is not binding on the courts."); *Arco Indus. Corp. v. American Motorists Ins. Co.*, 233 Mich. App. 143, 594 N.W.2d 74, 76 (Mich.Ct.App. 1998) ("The portion of the *Yaldo* majority opinion discussing M.C.L. § 500.2006(4); MSA 24.12006(4) was not necessary to its decision of the issue before the Court and must therefore be regarded as merely dictum that is not binding on this Court.").

*Yaldo* has not been expressly overruled—it need not be, if the statement at issue is in fact dictum, a question we decline to reach—and the Michigan Supreme Court has not yet definitively spoken on the issue. It seems, however, that the Michigan Supreme Court, if called upon to resolve this question, would approve of the trend among Michigan's lower courts prohibiting the assessment of statutory interest where a claim is reasonably in dispute. *Cf. Comm'r v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) ("If there be no decision by [the State's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."); *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995) (same). Kerwin's first argument therefore is without merit.

### 2. Reasonableness inquiry

■ Kerwin's second argument also must fail. The district court found that

Paul Revere's failure to provide disability benefits to Kerwin was the result of an erroneous interpretation of law and concluded that Paul Revere's failure to offer any evidence to support its "unsubstantiated position that plaintiff was not totally disabled" in the face of "plaintiff's uncontroverted evidence" demonstrated that the claim was not reasonably in dispute. On the basis of this finding, the district court ordered Paul Revere to pay Kerwin 12% statutory interest on all unpaid disability benefits.

■ While it is true that an insurance company's defenses "based on a plainly invalid contract clause or plainly erroneous interpretation of law" may provide evidence that the claim at issue is not reasonably in dispute, *see Jones v. Jackson Nat'l Life Ins. Co.*, 819 F.Supp. 1372, 1379 (W.D.Mich.1993), "[t]he purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay in recovering benefits to which the plaintiff is ultimately determined to be entitled." *Arco Indus. Corp.*, 594 N.W.2d at 148. Paul Revere's failure to pay Kerwin disability benefits under the Policy was not evidence of a dilatory motive: upon the submission of a claim by Kerwin, Paul Revere paid disability benefits to Kerwin until its investigation revealed that there was some question whether Kerwin could perform the important duties of a trial attorney on a part-time basis. It concluded that total disability benefits were unavailable to Kerwin, but nevertheless invited him to seek residual disability benefits to recover for his reduced productivity. These actions evidence neither bad faith nor an unreasonable interpretation of the relevant law; only after the close of discovery and all issues were aired in the parties' summary judgment motions did it become apparent

that Kerwin had a meritorious claim. Moreover, that Paul Revere failed to put forward sufficient evidence to survive Kerwin's summary judgment motion is not dispositive of the question of whether the claim was reasonably in dispute. The district court erred in holding Paul Revere to this more rigorous standard. Accordingly, we find that its statutory interest assessment was error and REVERSE the district court on this point.

## C. Attorneys' Fees

Michigan law provides that "[e]xcept in a class action, a person who suffers loss as a result of a violation of [the Michigan Consumer Protection Act ("MCPA")] may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." Mich. Comp. Laws Ann. § 445.911(2). Kerwin alleged in his complaint that, pursuant to § 445.911(2), he was entitled to attorneys' fees due to "[d]efendant's misconduct in the form of its breach of contract as well as its failure to provide services as represented [by] the gross discrepancy between the oral description of the benefits which would be available to Defendant compared to the benefits that have been denied through claim adjudication and other wrongs." The district court agreed with Kerwin and found that "[p]laintiff's bona fide claim for disability benefits was denied in the face of uncontroverted evidence establishing a disability."

Paul Revere argues that the district court erred in granting Kerwin attorneys' fees, because neither Kerwin nor the district court ever set forth what provision of the Uniform Trade Practices Act ("UTPA"), Mich. Comp. Laws Ann. §§ 500.2001 *et seq.*, was violated. Although Kerwin sought attorneys' fees pursuant to § 11 of the MCPA, Paul Revere asserts that the wrong alleged by Ker-

win—deceptive statements—is actually covered by the UTPA, and not the MCPA.

 On the record before this court, however, we cannot determine whether the district court properly granted attorneys' fees in this case. Both parties' concession at oral argument that the attorneys' fees question was not fully briefed below convinces us that the district court erred when it determined that Kerwin was entitled to attorneys' fees without first allowing the parties an opportunity to argue the issue. *See Spar Gas, Inc. v. AP Propane, Inc.,* No. 91–6040, 1992 WL 172129, at *3, 972 F.2d 348 (6th Cir.) (unpublished disposition) (directing the district court on remand "to hold a hearing, request additional briefing, or use whatever other procedure it deems appropriate in the exercise of its discretion, to obtain the information and evidence necessary to its [attorneys' fees] determination"); *cf. Damach, Inc. v. City of Hartford,* No. 99–9319, 2000 WL 1876787, at *3, 239 F.3d 155 (2d Cir.) (noting that remand to allow for additional briefing may be appropriate "to provide the district court with a record which will, in turn, enable it to offer a more detailed and conclusive analysis of the matter"). Accordingly, we VACATE the district court's order granting attorneys' fees and REMAND to allow it to seek additional briefing on whether attorneys' fees are appropriately awarded in this case.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Kerwin on the question of liability, REVERSE its grant of statutory interest in favor of Kerwin, and VACATE the district court's grant of attorneys' fees and REMAND this case for further proceedings.